UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SHARON B. DAVIDSON,

    Plaintiff,

v.

CAROLYN W. COLVIN[1], Acting Commissioner of Social Security Administration,

    Defendant.

No. CV-11-0094-RHW

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 14, 17. Maureen J. Rosette represents Plaintiff Sharon B. Davidson. Special Assistant United States Attorney, Richard M. Rodriguez, represents Defendant Commissioner of Social Security (the "Commissioner"). Plaintiff brings this action seeking judicial review under 42 U.S.C. § 405(g) of the Commissioner's final decision, which denied her application for supplemental security income ("SSI") under section 1614(a)(3)(A) of the Social Security Act. After reviewing the administrative record and briefs filed by the parties, the Court is fully informed.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT ~ 1**

q:\rhw\acivil\2011\davidson\order sj.docx

For the reasons set forth below, the Court **denies** Plaintiff's Motion for Summary Judgment, and directs entry of judgment in favor of Defendant.

## I.     Jurisdiction

Plaintiff's claim is properly before this Court pursuant to 42 U.S.C. § 405(g). On August 31, 2007, Plaintiff filed an application for SSI, alleging disability beginning August 14, 2007. Tr. 99. After benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). Tr. 78. Plaintiff appeared with counsel and testified at a hearing held July 17, 2009, in Spokane, Washington. Tr. 10, 33. ALJ Moira Ausems presided over the hearing, and Vocational Expert ("VE") Daniel McKinney was also present and testified. *Id.* The ALJ denied benefits on December 4, 2009, Tr. 10-28, and the Appeals Council denied review on February 5, 2011, Tr. 1-3, which made the ALJ's decision the Commissioner's final decision and subject to judicial review.

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v),

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 2**

416.920; *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. 20 C.F.R. §§ 404.1574, 416.972; *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. §§ 404.1571, 416.920(b). If she is not, the ALJ proceeds to step two.

Step 2: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. §§ 404.1508-09, 416.908-09. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Step 4: Does the impairment prevent the claimant from performing work he has performed in the past? 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, she is not disabled. *Id.* If the claimant cannot perform this work, proceed to the fifth and final step.

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 3**

Step 5: Is the claimant able to perform other work in the national economy in view of her age, education, and work experience? 20 C.F.R. §§ 404.1520(f), 416.920(f).

The claimant bears the burden of proof at steps one through four above. *Molina v. Astrue,* 674 F.3d at 1104, 1111 (9th Cir. 2012); *Lockwood v. Comm'r of Soc. Sec. Admin.,* 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.  Standard of Review

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue,* 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater,* 108 F.3d 978, 980 (9th Cir.1997) (citation omitted). In determining whether this standard has been satisfied, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT * 4**

inferences reasonably drawn from the record." *Molina,* 674 F.3d at 1111. Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders,* 556 U.S. 396, 409–10 (2009).

### IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and only briefly summarized here. Plaintiff was 41 years old when she filed for SSI benefits on August 24, 2007. Tr. 99. At the time of the hearing on July 7, 2009, Plaintiff resided in a half-way house in Spokane, Washington. Tr. 16, 38.

Washington Department of Corrections records indicate that Plaintiff was convicted of first degree assault in 1999. Tr. 230, 240. Plaintiff received an eight year sentence for her role as an accomplice in a plot to bomb a community corrections office. *Id.* Plaintiff's live-in boyfriend at the time constructed an improvised explosive device, of which she was aware. *Id.* The device was used in a detonation that resulted in severe injuries to a Gray's Harbor Community Correction Officer. *Id.* Plaintiff was released from prison in October of 2006, and relocated to Spokane. Tr. 37-38, 100, 215.

Although she did not complete high school, Plaintiff earned a GED in 1984. Tr. 155. While incarcerated, Plaintiff obtained a Washington State University certification for master gardening in 2002, and an ornamental horticultural technician certificate through Tacoma Community College in 2003. Tr. 124, 155. After release, Plaintiff worked in a bakery packaging bread. Tr . 39, 151. Plaintiff then quit the bakery and worked for several months as a horticultural worker in a greenhouse. Tr. 41-43, 151. Thereafter, Plaintiff again terminated her employment,

and labored as a janitor until the end of August 2007 -- when she filed her application for SSI benefits. Tr. 42, 151.

## V. The ALJ's Findings

The ALJ determined that Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act and denied her application for SSI, protectively filed on August 24, 2007. *See* ALJ's Decision, Dec. 4, 2009, Tr. 10-28.

At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date. Tr. 10.

At **step two**, the ALJ found that Plaintiff's major depressive disorder, anxiety disorder, undifferentiated somatoform disorder, personality disorder, and cervical degenerative disk disease were severe and they more than minimally limited Plaintiff's ability to work. Tr. 12. (citing 20 C.F.R. § 416.920(c)). However, the ALJ found that Plaintiff's cystic tumors of the ovary, hernia, GERD, asthma/chronic obstructive pulmonary disease, right calf strain, low back pain, borderline intellectual functioning, and alleged dizzy spells were not severe impairments, as they imposed no more than a minimal or *de minimis* limitation upon her ability to do work-related activities. Tr. 12-14.

At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1 ("the Listings"). Tr. 15. The ALJ considered whether Plaintiff's spinal impairment met a Listing for 1.04 - *Disorders of the Spine,* and determined that it did not because there was "no evidence of root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss, accompanied by sensory or reflex loss, and positive straight leg raising test." Tr. 15.  The ALJ also "considered singly and in combination" whether Plaintiff's mental impairments met Listings:

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 6**

12.04 - Affective Disorder; 12.06 - Anxiety-Related Disorders; 12.07 - Somatoform Disorder, and; 12.08 - Personality Disorders.

The ALJ considered whether the "paragraph B" criteria were satisfied and determined they were not because the mental impairments did not result in at least two "marked" restrictions or difficulties. Tr. 15. The ALJ found that Plaintiff had mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence or pace, and zero episodes of decompensation which have been extended to duration. *Id.* The ALJ found insufficient evidence to establish the presence of the "paragraph C" criteria. *Id.*

At **step four**, relying on the VE's testimony, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work. Tr. 16. The ALJ limited Plaintiff to SVP 3 level tasks, due to the combination of physical impairments and mental symptoms and added a limitation that Plaintiff should have no more than casual contact with the general public. The ALJ then determined that Plaintiff could not perform past relevant work as a horticultural worker (heavy, unskilled, SVP 2), because the VE testified that an individual with Plaintiff's RFC could not perform such work. Tr. 27, 58-63.

At **step five**, the ALJ found that considering her age, education, work experience, and RFC, Plaintiff could perform a significant number of existing jobs in the national economy. *Id.* The ALJ based this decision on the VE's testimony and her review of the Dictionary of Occupational Title ("DOT") that individuals with Plaintiff's age, education, work experience, and RFC can perform jobs like small product assemblers, small parts assemblers, packing line workers, and packing line inspectors. Tr. 27-28, 60-63. The VE also testified that similar individuals limited to sedentary work could still perform these same jobs. Tr. 60-

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 7**

63. As a result of these findings, the ALJ concluded that Plaintiff was not disabled under the meaning of the Social Security Act. Tr. 28.

## VI. Issues for Review

Plaintiff alleges the ALJ failed to properly evaluate the medical and psychological opinion evidence, and that she was "much more limited from a psychological standpoint" than the ALJ's determination. ECF No. 15 at 10. In other words, Plaintiff challenges the ALJ's residual functional capacity assessment regarding her mental limitations. ECF No. 19 at 1. Specifically, Plaintiff argues the ALJ improperly rejected the opinions of treating psychologist John Arnold, Ph.D., and examining psychologist Debra Brown, Ph.D. *Id.* at 10-16. Defendant contends the ALJ properly evaluated the medical evidence and the Commissioner's decision is free of legal error and supported by substantial evidence. ECF No. 18 at 6-12. For the reasons described below, the Court agrees with Defendant.

## VII. Discussion

**A. The ALJ Properly Evaluated the Medical and Psychological Opinion Evidence Re: Plaintiff's Mental Impairments**

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Social Sec. Admin.,* 169 F.3d 595, 601 (9th Cir.1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 8**

q:\rhw\acivil\2011\davidson\order sj.docx

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick,* 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample,* 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen,* 881 F.2d 747, 755, (9th Cir.1989).

In evaluating medical or psychological evidence, a treating or examining physician's opinion is entitled to more weight than that of a non-examining physician. *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester,* 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Sec. of Health and Human Servs.,* 44 F.3d 1453, 1463–64 (9th Cir. 1995).

The ALJ is not bound to a medical source's opinion concerning a claimant's limitations on the ultimate issue of disability. *Magallanes,* 881 F.2d at 751. If the record as a whole does not support the medical source's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004).

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 9**

### 1. Summary of Medical and Psychological Opinion Evidence

Washington State Prison records indicate that Plaintiff was examined by David Grubb, M.D., and Deborah Miller, MSW, between July 1, 2005 and September 11, 2006. Tr. 201, 211-30. Both Dr. Grubb and Ms. Miller documented Plaintiff's major depression, attention deficit hyperactivity disorder, and anxiety. *Id.* On July 1, 2005, Dr. Grubb noted that Plaintiff "had no psychological or psychiatric treatment as an outpatient and no psychiatric hospitalizations" and there was "no history of psychosis or thought disorder." Tr. 229. In addition, Plaintiff began taking psychotropic medications for depression and anxiety while incarcerated, which improved her mood. Tr. 211-30, 240. On September 9, 2006, shortly before her release, Ms. Miller indicated that "[n]o signs or symptoms of an underlying thought disorder were observed . . . Patient appears to be functioning relatively well." Tr. 211.

After her release, Plaintiff went to the Community Health Association of Spokane ("CHAS") clinic in 2006. Tr. 248-65, 285-95. Plaintiff sought treatment for depression, anxiety, and insomnia, and neck pain from her primary care physician Michael Szymanski, ARNP. *Id.* Dr. Szymanski examined Plaintiff numerous times between December 19, 2006 and November 1, 2007, *Id.* Thereafter, Plaintiff returned to the CHAS clinic and was treated from November 13 2007 to April 23, 2009, for both physical and mental impairments. Tr. 329-424.

On August 14, 2007, John F. McRae, Ph.D., examined Plaintiff in connection with a psychological and learning disability evaluation. Tr. 240. Dr. McRae diagnosed Plaintiff with major depression, recurrent without psychotic features, and anxiety disorder NOS (elements of generalized anxiety disorder and PTSD). Tr. 243. Dr. McRae conducted diagnostic testing and found that although Plaintiff's IQ fell within the borderline range, he felt that her anxiety probably interfered with the IQ testing, and that Plaintiff was more likely in the low-average

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 10**

IQ range. Tr. 242. Plaintiff was assessed a Global Assessment of Functioning[2] ("GAF) Score of 55, indicative of moderate symptomology.[3] Dr. McRae opined that it would be beneficial for Plaintiff to pursue work using her experience and background as a master gardener. Tr. 243.

On September 25, 2007, John Arnold, Ph.D., evaluated Plaintiff. Tr. 244-47. Plaintiff's Department of Social and Health Services ("DSHS") case worker referred her to Dr. Arnold, an employee of the CHAS clinic. Tr. 244. Dr. Arnold diagnosed Plaintiff with major depression (recurrent, moderate), anxiety disorder (NOS with PTSD features), and a rule out diagnosis of undifferentiated somatoform disorder. Tr. 246. Dr. Arnold also diagnosed a personality disorder, NOS with paranoid and histrionic features. *Id.* Dr. Arnold assessed Plaintiff a GAF score of 58. *Id.* Dr. Arnold noted that Plaintiff's "academic and employment history suggests at least borderline intellectual abilities," yet he did not conduct any formal IQ testing which admittedly would have been necessary "to garner a more accurate estimation of her functioning in this area." *Id.* After this initial assessment, Dr. Arnold treated Plaintiff from September 2007 to April 2009. Tr. 329-424.

On October 29, 2007, Mary A. Gentile, Ph.D., submitted a Mental Residual Functional Capacity Assessment and a Psychiatric Review Technique. Tr. 267-70, 271-84. Dr. Gentile, a non-examining and consulting physician, opined that

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

[3] "A GAF of 51–60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM–IV–TR") at 34)).

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 11**

Plaintiff had mainly mild to moderate non-exertional limitations in the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Tr. 267-68. Dr. Gentile opined Plaintiff was "capable of simple and well-learned complex tasks." Tr. 269. Dr. Gentile also included limitations regarding Plaintiff's attention and concentration, interaction with the general public and coworkers, and time to adjust to changes in work tasks. Tr. 269.

On March 24, 2008, Dr. Arnold again evaluated Plaintiff. Tr. 425-28. Dr. Arnold again diagnosed Plaintiff with major depression and anxiety disorder, and personality disorder, including undifferentiated somatoform disorder. Tr. 428. Dr. Arnold assessed Plaintiff a GAF score of 55. *Id.* On April 23, 2008, Dr. Arnold submitted his report in conjunction with a DSHS psychological evaluation. Tr. 430-33. Dr. Arnold opined that Plaintiff had mostly moderate cognitive and social limitations, with the exception of her ability to exercise judgment and make decisions (cognitive factor) and the ability to relate appropriately to co-workers and supervisors (social factor), which he rated as markedly limited. Tr. 432.

On April 24, 2009, Debra D. Brown, Ph.D., completed a psychological evaluation of Plaintiff. Tr. 311-18. Dr. Brown's diagnoses included major depression (single episode, moderate), generalized anxiety disorder, personality disorder (with borderline features), borderline intellectual functioning, and included an obsessive-compulsive disorder diagnosis. Tr. 317-18. Dr. Brown also rated Plaintiff's GAF score to be 41, indicative of severe symptomology. Tr. 317. Notably, Dr. Brown concluded, "[u]ntil the interpersonal and intrapersonal difficulties are worked through in psychotherapy, those added to the cognitive deficits will keep Ms. Davidson unemployable." Tr. 318. Dr. Brown's submitted her report along with a second DSHS psychological evaluation. Tr. 306-10. Dr. Brown opined that Plaintiff was mostly moderately limited in regard to cognitive factors, but markedly limited in her social abilities to relate appropriately to co-

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 12**

workers and supervisors, to interact with the general public, and to tolerate the pressures and expectations of a normal work setting. Tr. 308.

### 2. John Arnold, Ph.D.

Plaintiff argues the ALJ improperly rejected the opinions of Dr. Arnold, her treating psychologist. ECF No. 15 at 13-15. The ALJ found that Dr. Arnold's GAF score of 58 from his September 25, 2007, opinion was accorded significant weight. Tr. 26. However, the ALJ gave the psychological evaluation dated March 24, 2008, little weight. *Id.* The ALJ stated:

> [Dr. Arnold] opined the claimant had mostly moderate cognitive and social limitations, except she was markedly limited in exercising judgment and making decisions and relating to coworkers and supervisors (Exhibit 5 F). This assessment is not consistent with the mental status examinations in the treatment notes wherein it is reported the claimant has good to fair judgment. Moreover, aside from the claimant's self-reports of isolating, there is very little evidence in the record related to the claimant's social functioning. She has no record of being fired from past employment and she has given inconsistent statements related to why she has left previous jobs[4]. In other words, there is no evidence of significant problems with coworkers and supervisors.

Tr. 26.

Here, the ALJ's rejection of Dr. Arnold's opinion need only be supported by specific and legitimate reasons, as it was contradicted by Drs. Gentile and McRae's opinions that Plaintiff's mental impairments did not prevent her from working. Tr. 240-43, 267-69, 281-83; *see Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2005). The ALJ permissibly rejected Dr. Arnold's opinion as to Plaintiff's judgment and decision making, as it was not consistent with his own mental status examination. This is a "specific and legitimate reason" for rejecting Dr. Arnold's

---

[4] The ALJ found that "claimant's statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible . . ." Tr. 17. Plaintiff has not challenged the ALJ's credibility findings.

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 13**

opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Also, the Court finds there is substantial evidence to support the ALJ's finding. Dr. Arnold consistently noted that Plaintiff had "good to fair judgment" throughout her 18 months of treatments. *See, e.g.,* Tr. 244-47, 251, 295, 338, 341, 344, 353, 359, 360, 364, 375, 381, 385-87, 394, 405.

Likewise, the ALJ properly concluded that Plaintiff was not markedly limited in terms of social functioning. Tr. 25-26. Plaintiff alleged that she left both her bakery and greenhouse jobs because she was yelled at by a co-worker and later by a supervisor. Tr. 40-41 The ALJ found that "based on contradictory statements in the record regarding why the claimant left her bakery and greenhouse jobs, there is no evidence the claimant has had problems in the past with co-workers and supervisors." Tr. 25-26. This conclusion was supported by Dr. McRae's evaluation in which Plaintiff admitted she left the bakery in order to find better pay, and quit the greenhouse job because she did not care for the hours. Tr. 240. Dr. McRae also reported that "[Plaintiff] has worked now as a janitor for the past month and does not like that work but is performing it." *Id.* This testimony contradicts Dr. Arnold's check-box report that found Plaintiff would experience marked limitation and be unable to relate appropriately to co-workers and supervisors. Tr. 432; *See Morgan*, 169 F.3d at 602 (noting "evidence that supported the ALJ's determination included, among other things, testimony from the claimant that conflicted with her treating physician's opinion.") (internal citation omitted).

In sum, the Court finds the ALJ rejected Dr. Arnold's opinion for reasons that were specific and legitimate and supported by substantial evidence.

### 3.     Debra Brown, Ph.D.

Plaintiff next contends that the opinion of Dr. Brown, her examining psychologist, was accorded improper weight. ECF No. 15 at 9; Tr. 311-18. The ALJ gave Dr. Brown's April 24, 2009, psychological evaluation little weight. Tr.

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT * 14**

26. Dr. Brown found that Plaintiff had moderate cognitive limitations and mostly marked social limitations. Tr. 308. Defendant argues that Dr. Brown's opinion was properly accorded little weight "as it was inconsistent with the rest of the medical evidence, which failed to support the level of limitations found by Dr. Brown." ECF No. 18 at 9. The Court agrees the ALJ properly rejected Dr. Brown's opinion for the reasons stated below.

      Here, in the case of a contradicted opinion, the ALJ may reject the testimony of an examining physician, when she gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence. *Lester,* 81 F.3d at 831. However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Id.* (noting other contradictory evidence includes laboratory reports, medical reports, and claimant's testimony). To the extent that an examining physician's opinions are based upon the claimant's subjective complaints, the ALJ may cite the unreliable nature of the claimant's complaints as a reason for rejecting the examining physician's opinion. *Morgan*, 169 F.3d at 602.

      The ALJ first noted that Dr. Brown diagnosed Plaintiff with a GAF score of 41, indicating serious symptomology. Tr. 317. By contrast, Drs. McRae and Arnold both rated Plaintiff's GAF scores at 55 and 58, indicative of only moderate symptoms. Tr. 243, 428. The ALJ next questioned Dr. Brown's diagnosis of borderline intellectual functioning, which was not substantiated by the record. Tr. 26. This diagnosis, and the reasons for rejecting it, was discussed in detail by the ALJ at step 2. Tr. 14. The ALJ's conclusion that Plaintiff's IQ did not fall in the borderline range was further supported by Dr. McRae, who opined after diagnostic testing that Plaintiff had no learning disability, and that her IQ likely fell in the low-average range. Tr. 242. The ALJ also cited to Department of Corrections'

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 15**

psychiatric records which revealed no evidence of a learning disability in rejecting Dr. Brown's assessment of Plaintiff's cognitive functioning. Tr. 17-18. Finally, the ALJ relied on treatment notes in the record to reject Dr. Brown's opinion that Plaintiff's mental impairments were not as severe as assessed, when controlled by medication. Tr. 19-20, 26; *see Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); *see also* 20 C.F.R. § 416.929(c)(3).

Based on these inconsistencies, and as discussed *supra*, the ALJ properly rejected Dr. Brown's opinion, as it was based in a large part on Plaintiff's subjective complaints regarding her cognitive and social limitations – a credibility finding which Plaintiff does not challenge. Tr. 18; *Morgan*, 169 F.3d at 602 ("A physician's opinion of disability [which is] premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted.") (internal quotations and citation omitted).

Thus, the ALJ properly weighed the medical and psychological evidence and stated specific and legitimate reasons supported by substantial evidence in rejecting the opinions of Drs. Arnold and Brown.

**B.    The ALJ's Residual Functional Capacity Assessment**

Plaintiff argues the ALJ erred in assessing her residual functional capacity ("RFC"), regarding her mental impairments. ECF No. 19 at 1. This argument assumes that the opinions of Drs. Arnold and Brown were not properly discounted. However, the Court has determined that the ALJ properly evaluated the opinions of Plaintiff's treating and examining physicians. This Court affirms the ALJ's determination of a plaintiff's RFC if the ALJ applied the proper legal standard and the decision is supported by substantial evidence. *Morgan*, 169 F.3d at 599.

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 16**

1  Furthermore, the ALJ need only take into account limitations for which there was
record support and not based solely on a plaintiff's subjective complaints. *Bayliss*,
427 F.3d at 1217.

Here, the ALJ specifically included moderate mental limitations, as assessed by the medical providers, and supported by substantial evidence in the record as a whole. Tr. 16-26. Therefore, because the ALJ's RFC included only those limitations which were supported by substantial evidence, her decision was free of legal error.

## VIII.  Conclusion

Having reviewed the record in its entirety, and the ALJ's conclusions, the Court finds the ALJ's decision is free of legal error and supported by substantial evidence.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 14 is **DENIED.**

2. Defendant's Motion for Summary Judgment, ECF No. 17 is **GRANTED.**

3. The Commissioner's decision denying Plaintiff benefits is **AFFIRMED**.

4. The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 25th day of March, 2013.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 17**

q:\rhw\acivil\2011\davidson\order sj.docx